**William H. DUPREE, Appellant,**

v.

**DISTRICT OF COLUMBIA OFFICE OF EMPLOYEE APPEALS and District of Columbia Department of Corrections, Appellees.**

**Nos. 09–CV–1368, 09–CV–937.**

District of Columbia Court of Appeals.

Submitted Oct. 28, 2010.

Decided Dec. 22, 2011.

---

James F. Wallington, Washington, DC, for appellant.

Sonia I. Ignatova, Special Assistant Attorney General, with whom Peter J. Nickles, Attorney General for the District of Columbia at the time the brief was filed, and Donna M. Murasky, Deputy Solicitor General, were on the brief, for appellees.

Before GLICKMAN and BLACKBURNE–RIGSBY, Associate Judges, and BELSON, Senior Judge.

BLACKBURNE–RIGSBY, Associate Judge:

On August 3, 2001, the District of Columbia Department of Corrections ("DOC") released appellant William H. Dupree from his position as a Criminal Investigator due to a mandated reduction in force. Appellant noted an appeal of his release with the Office of Employee Appeals ("OEA"), which upheld his release, finding that the DOC complied with the applicable regulations. He then appealed this initial decision with the OEA Board, which issued a final decision affirming the initial decision. Following the OEA's affirmance of the initial decision, appellant sought relief from the Superior Court, which denied his petition for review. Appellant now challenges the Superior Court's order, alleging that the OEA failed to conduct an evidentiary hearing and further failed to consider four key factors that would have prevented him from being released from employment. Additionally, he claims that the Superior Court did not have jurisdiction to amend its order after the notice of appeal had been filed. We affirm in part and reverse in part the OEA's decision affirming appellant's release from employment and remand to the OEA for further findings.[1]

## I. Factual Background

Abolishing positions due to reductions in force ("RIF") places an agency under extreme pressure to give fair consideration to an employee's service before involuntarily terminating them. To help accomplish this, regulations have been promulgated to ensure that RIFs are conducted in a fair manner and are therefore less vulnerable to administrative challenge. *See* D.C.Code § 1–624.01 (2001) ("The Mayor ... shall issue rules and regulations establishing a procedure for the orderly furloughing of employees or termination of employees[.]"); *see also id.* § 1–624.02(a)(1) ("Reduction-in-force procedures ... shall include: (1) A prescribed order of separation based on tenure of appointment, length of service ..., District residency, veterans preference, and relative work performance[.]"). The regulations governing a RIF require an agency to first classify employees by their job category (known as a "competitive level") and then rank employees by seniority

---

[1] We need not decide the issue of whether the Superior Court lacked jurisdiction to amend its order after appellant filed his notice of appeal. Because we are vacating the final decision of the OEA and remanding this case to the OEA for an evidentiary hearing, additional findings on the issue of whether voluntary retirements should be considered in constructing the reduction in force retention registers, and additional findings regarding which year's performance review should be applied, a new OEA order will be forthcoming. Therefore, we need not decide appellant's last procedural claim. *See District of Columbia Metro. Police Dep't v. Pinkard,* 801 A.2d 86, 90 (D.C.2002) (declining to reach appellant's remaining contentions because the case was being remanded to the OEA for a proper review of the trial board's findings).

within each competitive level. 6–B DCMR §§ 2410, –2412.2 (2000).[2] The rankings are recorded on a retention register, with the most senior employees ranked at the top of the list, and the least senior at the bottom. *Id.* §§ 2412, –2413.4. An employee's rankings can be enhanced by crediting additional years served for "outstanding" performance ratings, veteran status and/or residency in the District of Columbia. *Id.* §§ 2416, –2417, –2418. Such enhancements allow an employee to move higher on the retention register. During a RIF, employees at the bottom of the register are released first. *Id.* § 2420.3.

Appellant was ranked eighth of ten employees on the Criminal Investigator retention register. As such, he was third from the bottom of the retention register and was among the five Criminal Investigators slated for release.[3] Appellant appealed his release to the OEA, alleging that he should have received an enhancement for an "outstanding" performance rating and that the Criminal Investigator retention register failed to include two employees classified as "Criminal Investigator (Internal Affairs)." The administrative law judge ("ALJ") ruled that appellant's release was proper and appellant appealed this ruling to the OEA Board, which affirmed the initial decision. Appellant then filed a petition for review to the Superior Court, which affirmed the OEA decision on July 23, 2009.

On August 3, 2009, appellant appealed the Superior Court's order. On August 5, 2009, appellees OEA and DOC timely filed a motion to amend the Superior Court order "granting" appellant's petition, noting that since the Superior Court affirmed the OEA decision, the Superior Court actually intended to *deny*, not grant, the petition for review. As such, the Superior Court amended its order to clarify that it was denying the petition for review. Appellant then appealed the amended Superior Court order, and appellant's two appeals to this court were consolidated.

## II. Analysis

Our review of agency decisions on appeal from the Superior Court is the same as in administrative appeals that come to us directly. *Johnson v. District of Columbia Office of Emp. Appeals*, 912 A.2d 1181, 1183 (D.C.2006). "To pass muster, an administrative agency decision must state findings of fact on each material, contested factual issue; those findings must be supported by substantial evidence in the agency record; and the agency's conclusions of law must follow rationally from its findings." *Id.* (quoting *Murchison v. District of Columbia Dep't of Pub. Works*, 813 A.2d 203, 205 (D.C.2002)) (internal quotation marks omitted). When reviewing an appeal of an OEA decision, we are confined "strictly to the administrative record" and "must affirm the OEA's decision so long as it is supported by substantial evidence in the record and otherwise in accordance with law." *Settlemire v. District of Columbia Office of Emp. Appeals*, 898 A.2d 902, 905 n. 4 (D.C.2006) (citing *Raphael v. Okyiri*, 740 A.2d 935,

---

2. This opinion applies the regulations in effect at the time of appellant's initial appeal to the OEA, which are found at 6–B DCMR §§ 2400–2499, 47 D.C.Reg. 2425–2446 (April 7, 2000). The current version is at 6–B DCMR §§ 2400–2499 (2008). There are only minor differences between these versions, none of which are relevant to this case.

3. Appellant was originally ranked second from the bottom of the retention register, but subsequent review of the residency status of the Criminal Investigators resulted in him moving up one position in the rankings. We conclude, and appellees concede, that this was the appropriate placement of appellant. Therefore, the remainder of this opinion presumes that appellant's starting point is third from the bottom of the retention register.

945 (D.C.1999)). "Upon review, we will only reverse where the OEA's action was 'arbitrary, capricious, or an abuse of discretion.'" *Jahr v. District of Columbia Office of Emp. Appeals,* 19 A.3d 334, 340 (D.C.2011) (quoting *Bagenstose v. District of Columbia Office of Emp. Appeals,* 888 A.2d 1155, 1157 (D.C.2005)). Questions of law are reviewed *de novo. District of Columbia v. District of Columbia Office of Emp't Appeals,* 883 A.2d 124, 127 (D.C. 2005)

Appellant challenges his release, contending that he should have been placed higher on the retention register. Appellant raises four arguments on appeal: (1) appellant was entitled to an evidentiary hearing; (2) three retired employees should have been counted among the employees that were released for purposes of the RIF; (3) the agency should have used the current year's performance ratings, but if it applied the prior year's ratings, appellant should have received an enhancement for his "outstanding" performance rating for that year; and (4) two employees less senior than appellant were improperly excluded from the Criminal Investigator retention register. We address each of these contentions in order.

■ As an initial matter we note that the ALJ addressed only two of the above four contested issues at the administrative level because, as the ALJ explained:

> [I]t was agreed that the [appellant] can prevail only if he is able to prove two facts: (1) that he was entitled to an "outstanding" evaluation for the rating period used by the agency during the RIF in question (April 1, 1999—March 31, 2000); and (2) that [two less senior employees] were improperly placed on a separate retention register from that of [appellant], and should in fact have been on [appellant's] retention register.

However, appellant contends that he never abandoned any of the issues he raised in his initial notice to the OEA appealing his release. He reiterated this point in his appeal from the OEA's initial decision for a final decision from the OEA Board, where he noted that the ALJ failed to address several of his arguments. The record supports appellant's contention that he did not abandon any of the issues initially raised in his appeal to the OEA.[4] Therefore, we address each issue in turn and conclude that issue (1) warrants reversal, issues (2) and (3) warrant remand for further findings, and we affirm as to issue (4).

### A. Evidentiary Hearing

■■ First, appellant claims that the ALJ should have conducted an evidentiary hearing "to adduce testimony to support

---

4. In the OEA's initial decision, the ALJ includes a footnote stating that "at the October 21, 2003 Status Conference the parties agreed that the only issues in dispute are [the two issues] set forth herein." However, the Status Conference was not transcribed, so the record does not confirm whether appellant completely abandoned his other arguments, or if he merely agreed that he needed to succeed on these two issues. The OEA Board's final decision states that "it is not necessary that we re-examine herein every point which [appellant] believes to be decisive to the outcome of his case. Our review of the entire record reveals that the [ALJ] gave full consideration to all of these points during the trial of this appeal and properly disposed of them." However, the absence of any discussion of several of appellant's arguments in the OEA's initial and final decisions belies the Board's determination that all the issues were fully considered. "[W]e will not assume that [an] issue has been considered *sub silentio* when there is no discernible evidence that it has." *District of Columbia Dep't of Mental Health v. District of Columbia Dep't of Emp't Servs.,* 15 A.3d 692, 697 (D.C.2011) (quoting *Branson v. District of Columbia Dep't of Emp't Servs.,* 801 A.2d 975, 979 (D.C.2002)) (internal quotation marks omitted; second brackets in the original).

the argument that the agency's termination action was flawed and contrary to law." The ALJ declined to conduct an evidentiary hearing because he determined that this matter could be decided based on the documentary evidence in the record.[5] The regulations governing OEA hearings give the ALJ discretion to conduct an evidentiary hearing, or to decide on the record.[6] *See* 6–B DCMR § 625.1 and -.2 ("*If* the [ALJ] grants a request for evidentiary hearing, or makes his or her own determination that one is necessary, the [ALJ] will so advise the parties[.]") (emphasis added). However, our review of the administrative record reveals that the documents submitted in response to appellant's contentions obfuscated rather than clarified the material issues, rendering it very difficult to decide these issue on the record.[7] The ALJ was made aware of these material issues in the appellant's initial notice of appeal (wherein he outlined three of the four issues he now appeals) and in his Opposition to Agency's Motion to Dismiss & Motion for

a Closed Evidentiary Hearing. This is not a case where appellant never raised material issues, and therefore the ALJ was not aware of the need for an evidentiary hearing. *Cf. Anjuwan v. District of Columbia Dep't of Pub. Works,* 729 A.2d 883, 885 (D.C.1998) (affirming OEA's denial of an evidentiary hearing where appellant made no mention of the issue of retaliation even after the ALJ ordered the parties to identify the issues to be resolved in the case). Neither is this a case where only questions of law are concerned, since factual determinations remain at issue for at least two of the four issues noted above. *See Chiapella v. District of Columbia Bd. of Zoning Adjustment,* 954 A.2d 996, 1002–03 (D.C.2008) (remanding for a hearing on factual issues, but declining to remand for a hearing for questions of law requiring interpretation of the agency's regulations). As noted above, although the ALJ believed only two issues were in dispute, appellant repeatedly raised several issues that required clarification and could not be de-

---

5. Appellant is seeking an evidentiary hearing based on the statutory provisions described in 6–B DCMR § 625.1 (1999) ("A party may request the opportunity for an evidentiary hearing to adduce testimony to support or refute any fact alleged in a pleading."). He does not contend that such a hearing is required based on due process. Indeed, there is no due process right to a hearing for terminations based on a RIF. *Hoage v. Bd. of Trustees of Univ. of District of Columbia,* 714 A.2d 776, 782–83 (D.C.1998) (when a RIF action is involved, "due process require[s] only that the affected employee be given notice and an opportunity to be heard—*i.e.,* an opportunity to have his case reviewed[.]").

6. This discretion is reiterated on the form appellant submitted when he requested review of the RIF notice: "The administrative judge shall determine whether a hearing is required. If a hearing is not held, the administrative judge will make a decision on the basis of the documents submitted into the record."

7. For example, in response to appellant's contention that three retired employees should have been counted among the employees that were released for purposes of the RIF, the documentary record includes responses to appellant's interrogatory requests, personnel action forms for the three retired employees, and two letters from the Director of Personnel. The interrogatory responses state that two of the retired employees elected retirement in lieu of being terminated by the RIF. This is contradicted by the personnel action forms which note that only one of the three employees elected retirement in lieu of an involuntary separation due to a RIF. Furthermore, the letters sent by the Director of Personnel do not explain this discrepancy, nor do they provide any explanation as to how election of retirement in lieu of involuntary separation during a RIF are generally handled and what effect they have on the retention registers.

cided solely on the documentary evidence in the administrative record. *See Levitt v. District of Columbia Office of Emp. Appeals,* 869 A.2d 364, 366–67 (D.C.2005) (remanding for evidentiary hearing where appellant alleged he was deliberately moved to a position that was scheduled to be eliminated one month after he was moved to the position); *see also Smithsonian Inst. v. District of Columbia Dep't of Emp't Servs.,* 514 A.2d 1191, 1196 (D.C. 1986) (remanding for further factual findings and allowing ALJ to base decision on the record already made "[b]ecause a full hearing has already been held"); *Colton v. District of Columbia Dep't of Emp't Servs.,* 484 A.2d 550, 552–53 (D.C.1984) (remanding for further findings and allowing ALJ discretion to take further testimony and receive further documentary evidence where the ALJ had *already* conducted a hearing on the issue in the first instance). We therefore conclude that, under the circumstances of this case, the ALJ abused his discretion by failing to conduct an evidentiary hearing.

## B. Voluntary Retirements During the RIF

Appellant's second contention is that he should not have been reached for release because three of the five Criminal Investigator positions slated for abolishment should have been filled by the three Criminal Investigators who voluntarily retired prior to the RIF becoming final. Appellant contends that "it is harmful error to require an employee to lose the competition to positions that are in fact unencumbered due to the pre-separation retirement of the employees." Appellant seems to argue that if the retirements encompass three of the five mandated RIF positions, leaving only two RIF positions subject to abolishment, then those two remaining positions would have been filled by the two employees below appellant on the retention register.[8] If this argument has merit, appellant would not have been reached for release because he was ranked third from the bottom of the retention register and only the two lowest ranked positions would have been subject to abolishment. In response, the Director of Personnel wrote to appellant and explained that the "DOC is in a RIF posture[.] [I]t is DCOP's position that recruitment and internal placement activity will cease." The letter did not cite any statutory or regulatory provision to support this position. In a later letter sent to the Labor Committee Chairperson, the Director of Personnel explained that retired employees involuntarily separated due to a RIF may elect to retire if they have enough years of creditable service. Such employees, according to the Director, qualify for Discontinued Service Retirement, which would entitle them to placement assistance under 6–B DCMR § 2420.3.[9] However, this letter

---

8. Appellant seems to argue in the alternative that he and other Criminal Investigators should have been able to compete for the vacancies left by the retiring employees, prior to the implementation of the RIF. However, it is not clear how that argument, if meritorious, would have affected the retention register, since we cannot determine from the record who would have received the vacant positions, had such a procedure been applied. Clarification of appellant's arguments and the resulting effect, if successful, is a factual determination that must be made by the OEA on remand.

9. This regulation states:

 In selecting employees on the agency reemployment priority list from among those adversely affected by reduction in force, but who have not yet been separated, offers of employment shall be made according to the employees' relative standing in their competitive levels. In this regard, a lower standing employee shall not be offered a position if a higher standing employee qualifies for the position, unless the higher standing employee declines the position.

does not respond to appellant's argument that positions unencumbered due to the pre-separation retirement of the employees may in some way re-calibrate the retention register.

 The statute and regulations are silent regarding the effect, if any, of retirements on the RIF procedures, and the letters from the DCOP are not helpful in this regard. When a statute is silent with respect to a specific issue, we cannot impose our own construction, but rather defer to the agency's interpretation. *Children's Nat'l Med. Ctr. v. District of Columbia Dep't of Emp't Servs.*, 992 A.2d 403, 412 (D.C.2010) (noting that a statutory omission "creates ambiguity which an agency charged with administering a statute may resolve"). Generally "this court will not attempt to interpret the agency's statute until the agency itself has done so. Instead, we will remand to permit the agency to engage in the necessary analysis of the legislation it is charged with carrying out." *King v. District of Columbia Dep't of Emp't Servs.*, 742 A.2d 460, 466 (1999) (internal citations and quotation marks omitted). Here, the agency has not provided a reasoned administrative interpretation for us to review. The question is whether positions vacated by retiring employees—after a RIF has been announced, but before the RIF is implemented—should be counted among the positions abolished under the RIF. Such a question requires a decision "applying both law and policy, one that the agency charged with administering the statute should have made in the first instance." *District of Columbia Dep't of Mental Health, supra*, 15 A.3d at 697 (remanding for a decision by the Compensation Review Board that addresses the legal arguments raised by the petitioner). We cannot determine from this record whether the single sentence in the informal letter sent to appellant by the DCOP was its official position regarding why retirements are not counted among the positions to be abolished, or whether appellees' position in their brief that "these employees' retirements did not affect [appellant's] retention standing for purposes of the RIF because all three retired during, or as a direct result of, the RIF" has any merit. Therefore, we remand to the OEA for a determination on the effect, if any, of voluntary retirements on the RIF procedures. *See King, supra*, 742 A.2d at 465.

## C. Performance Review Rating

 We similarly remand this case to the OEA for a determination regarding appellant's third contention that the agency incorrectly applied the prior rather than current year's performance ratings, in violation of 6-B DCMR § 2416. This regulation requires the DOC to apply the "current performance rating," which it defines as "the performance rating for the year which ended on the March 31 preceding the date of the reduction-in-force notice." 6-B DCMR § 2416.1 and -.2. The RIF notice was sent June 28, 2001. Thus, the current performance rating for purposes of the RIF ended on March 31, 2001 (April 1, 2000—March 31, 2001 rating year). The DCOP, however, applied the April 1, 1999—March 31, 2000 rating year's performance ratings because, as explained by the Director of Personnel in her October 18, 2001 letter to appellant, "[t]he D.C. Office of Personnel did not receive the performance ratings for the rating period . . . within the time period as mandated by the regulations . . . [t]herefore, the performance ratings for the rating period ending March 31, 2000 were used to conduct this RIF." The regulations are silent as to what happens when the current year's performance ratings have not been completed prior to the RIF, as was the case here. Thus, whether the agency could use the prior year's ratings was in dispute and

must be determined in the first instance by the OEA Board. If the Board determines that the current year's performance ratings should have been applied, then no Criminal Investigator was entitled to an enhancement for an "outstanding" performance rating, since the current year's performance reviews had not been completed. This means that if appellant succeeds on this argument, he makes no advancement in the ranking, and will remain third from the bottom of the retention register and subject to release (absent success on any of his other arguments).

However, if the OEA Board determines that the prior year's performance reviews were appropriately applied, appellant's alternate argument—that he was entitled to an enhancement for an "outstanding" performance rating that he received in the prior year's review—requires further consideration by this court. Appellant contends that he should have received an "outstanding" performance rating for the April 1, 1999—March 31, 2000 rating year, which would have improved his ranking on the retention register by one position (to fourth from the bottom). The ALJ found that appellant was not entitled to the "outstanding" performance review rating because he had not served in his position as a Criminal Investigator long enough for the performance rating to count for purposes of a RIF enhancement. Additionally, the ALJ determined that appellant did not have all the required supervisory and administrative signatures on his performance review form. This determination by the ALJ is not supported by substantial evidence in the record and requires reversal. In a letter to the Special Master,[10] the DOC sought approval to deny appellant an "outstanding" rating on the basis that appellant had not held his position for the required twelve-month rating period, from April 1, 1999 through March 31, 2000. The Special Master denied the request and determined that appellant was entitled to receive the benefit of his "outstanding" rating. He concluded that appellant's promotion to his current position as a Criminal Investigator was wrongfully delayed because of the DOC's "wrongful" and "retaliatory" conduct in a prior appeal of appellant's to the OEA.[11] Specifically, the Special Master stated it would be unfair "to allow the agency to penalize its employee[ ] for conduct that [was] found wrongful in the first instance." Therefore, the Special Master concluded, the fact that appellant had worked in the position as a Criminal Investigator for only nine months of the rating year instead of the full twelve months of the rating year prior to receiving his "outstanding" rating, could not be

10. Based on a consent decree, the DOC cannot make changes in the terms and conditions of employment of members of a defined protected class without first obtaining the approval of a Special Master. *See* Consent Decree at 18–20 *Neal v. Dir., District of Columbia Dep't of Corr.*, No. 93–2420–RCL (D.DC filed Nov. 24, 1993) *available at* http://www.clearinghouse.net/chDocs/public/EE–DC–0061–0002.pdf. Appellant was a member of this protected class of employees.

11. The prior petition of appeal that appellant filed with the OEA involved a grievance in which appellant alleged that the DOC incorrectly failed to select him for a vacant Criminal Investigator position, and instead gave the position to a candidate who was improperly given a residency preference, despite the fact that the candidate was not a resident of the District of Columbia. The ALJ issued an initial decision in favor of appellant on March 15, 1999 and appellant enforced the initial decision on June 1, 1999. Appellant was then appointed to the position on June 28, 1999. The Special Master reasoned that appellant would have been appointed to the Criminal Investigator position prior to the start of the review period (April 1, 1999), had the DOC properly selected appellant for the position in the first instance.

used as a basis for denying him the benefit of advancing on the retention register.

■ By the same token, the failure of DOC to procure "all the necessary approvals" for appellant's rating as required by 6–B DCMR § 2416.3, could not be used as a basis for denying the appellant the benefits of the "outstanding" rating. The reasons appellant did not obtain the necessary approvals on his performance review are attributable, in part, to the three-month time frame within which the Special Master was receiving and responding to the DOC's request for a ruling on whether appellant was entitled to the benefits of his "outstanding" rating. The Special Master's approval came on July 24, 2001, just days before the RIF became effective, which is well after the May 28, 2001 deadline for the performance reviews to count for purposes of the RIF. *See* 6–B DCMR § 2416.3 ("[T]he performance rating must have been officially acted upon with all the necessary approvals [and] received . . . not later than thirty (30) days before . . . the reduction-in-force notice is issued."). Additionally, one of the missing approvals was from the "Reviewer" who refused to sign appellant's performance review until the Special Master approved. While the applicable RIF regulations do not specify whether the thirty-day time frame can be tolled for any reason, the unique circumstances of this case dictate that appellant should not be penalized for the delay in receiving the necessary supervisory and administrative approvals for the "outstanding" rating, since such delays occurred by no fault of appellant when the DOC sought an advisory opinion from the Special Master. The evidence in the record supports

that appellant was entitled to the "outstanding" rating enhancement because the Special Master determined that the DOC's retaliatory conduct delayed appellant's promotion, so that appellant was prevented from serving in the position for the required twelve-month review period. The time period it took for the Special Master to review and issue his determination should not be counted against appellant to further deprive him of the "outstanding" rating. We agree with appellant that if the prior year's performance reviews apply to the RIF, he would have been placed higher on the retention register, fourth from the bottom. The OEA's finding that appellant was not entitled to the enhancement for the April 1, 1999—March 31, 2000 "outstanding" rating is not supported by substantial evidence.[12] Thus, on remand, the OEA must determine whether the prior year's (April 1, 1999—March 31, 2000) performance review ratings should apply. If, on remand, the OEA determines that it was proper to use the prior year's performance reviews since none were available for the current (April 1, 2000—March 31, 2001) year, then the OEA's ruling that appellant was not entitled to credit for his "outstanding" performance rating must be reversed.

## D. Separate Retention Registers for Criminal Investigators

■ Appellant finally contends that two less senior Criminal Investigators with a slightly different designation of "Criminal Investigator (Internal Affairs)" should have been added to the bottom of appellant's retention register. He contends

---

12. One other employee also received similar approval from the Special Master to receive credit for the "outstanding" rating. However, this employee was ranked at the top of the Criminal Investigator retention register, so any enhancement he would have received would have had no effect on the retention register, since employees at the bottom of the register are released first. *See* 6–B DCMR § 2420.3 ("Competing employees shall be selected for release from a competitive level in the inverse order of retention standing, beginning with the employee with the lowest retention standing on the retention register.")

that the Criminal Investigator (Internal Affairs) job description was substantially similar to his job description of a regular Criminal Investigator, and the addition of the two junior Criminal Investigators (Internal Affairs) would have moved appellant up two additional positions on the retention register, ranking him fifth from the bottom. Although such a ranking would have still resulted in appellant being reached for release (since the bottom five positions were released), if appellant succeeds on this and any one of his other arguments, his ranking on the retention register would increase enough to prevent his release. However, appellant's argument that two Criminal Investigators (Internal Affairs) should be included on the Criminal Investigator retention register is undermined by the regulations. The applicable regulations state that "[e]mployees whose official position descriptions have the same title, series, and grade, but who have specialties which are identified on their position descriptions by parenthetical titles, ... shall be assigned to separate competitive levels." *Id.* § 2411.2. The position description for a Criminal Investigator (Internal Affairs) contains a parenthetical title; therefore, creating a separate retention register for this competitive level is consistent with the regulations. *Id.* Furthermore, the record contains a notice from the DCOP stating that "the positions located in the Internal Affairs Office have powers of arrest ... [t]herefore, this position should be assigned a different [Competitive Level Code] based on this additional responsibility." Thus, there was sufficient evidence to support the ALJ's finding that exclusion of the Criminal Investigator (Internal Affairs) employees from appellant's retention register was proper. Therefore, we affirm the OEA decision in this regard.

## III. Conclusion

Accordingly, we reverse the OEA's determination that an evidentiary hearing was not necessary. Additionally, we remand to the OEA for additional findings regarding appellant's contentions that retiring employees created vacancies that should have been competed for during the RIF process and that the incorrect year's performance reviews were used during the RIF. We affirm the OEA's determination that appellant's retention register properly excluded Criminal Investigators with the (Internal Affairs) parenthetical.

*So ordered.*