# District of Columbia
# Court of Appeals

**No. 15-CV-997**



FILED

AUG 25 2016

DISTRICT OF COLUMBIA
COURT OF APPEALS

FLORENTINO RODRIGUEZ,

          Appellant,

**CAP-241-14**

  v.

DISTRICT OF COLUMBIA OFFICE OF EMPLOYEE APPEALS,

          Appellee,

 and

DISTRICT OF COLUMBIA DEPARTMENT OF HUMAN RESOURCES,

          Intervenor.

On Appeal from the Superior Court of the District of Columbia
Civil Division

  BEFORE: GLICKMAN and THOMPSON, *Associate Judges*; and FERREN, *Senior Judge*.

## J U D G M E N T

  This case was submitted to the court on the transcript of record and the briefs filed, and without presentation of oral argument. On consideration whereof, and for the reasons set forth in the opinion filed this date, it is now hereby

  ORDERED and ADJUDGED that the decision of the Superior Court is reversed; the decision of the Office of Employee Appeals ("OEA") is vacated; and the matter is remanded for further proceedings not inconsistent with this opinion.

     For the Court:

     JULIO A. CASTILLO
     Clerk of the Court

Dated: August 25, 2016.

Opinion by Associate Judge Phyllis D. Thompson.

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 15-CV-997

FLORENTINO RODRIGUEZ, APPELLANT,

v.

DISTRICT OF COLUMBIA
OFFICE OF EMPLOYEE APPEALS, APPELLEE,

and

DISTRICT OF COLUMBIA DEPARTMENT OF
HUMAN RESOURCES, INTERVENOR.

Appeal from the Superior Court
of the District of Columbia
(CAP-241-14)

(Submitted March 15, 2016                    Decided August 25, 2016)

*John F. Pressley, Jr.*, was on the brief for appellant.

*Lasheka Brown Bassey* filed a statement in lieu of brief on behalf of appellee.

*Karl A. Racine*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, and *Loren L. AliKhan*, Deputy Solicitor General, were on the brief for intervenor.

Before GLICKMAN and THOMPSON, *Associate Judges*, and FERREN, *Senior Judge*.

THOMPSON, *Associate Judge*: Florentino Rodriguez ("appellant" or the "Employee") challenges a decision of the District of Columbia Office of Employee Appeals ("OEA") that upheld his termination from his position as an Urban Park Ranger with the District of Columbia ("District") Department of Parks and Recreation after he failed a random drug test. He contends, *inter alia*, that his termination was improper because, in violation of the applicable collective bargaining agreement (the "CBA"), the District's personnel agency, the District of Columbia Department of Human Resources ("DHR" or the "Agency"), failed to provide notice to Local 2741 of the American Federation of Government Employees ("Union") (the union for appellant's bargaining unit) within forty-five business days of the date when the Agency knew or should have known of the act or occurrence that triggered the termination. We need not reach appellant's other arguments because we agree with him that Article 24, Section 2.2 of the CBA precluded his termination in light of the Agency's failure to give timely notice to the Union. Accordingly, we reverse the decision of the Superior Court, vacate the OEA decision, and remand for further proceedings not inconsistent with this opinion.

**I.**

On April 20, 2010, appellant submitted to a random drug test that the Agency conducted pursuant to the Child and Youth, Safety and Health Omnibus Amendment Act of 2004 ("CYSHA").[1]  On or about May 25, 2010, the Agency received the final test results:  appellant's urine tested positive for marijuana.  On June 30, 2010, the Agency served appellant with a notice of proposed adverse action, announcing that it planned to terminate his employment because the drug test revealed marijuana in his system.  The notice informed appellant that he had a right to respond to the notice, to provide statements or documents in support of his response, and to be represented.  Appellant obtained legal representation and filed a written response to the notice, asserting that (1) he had not smoked marijuana but had inhaled second-hand marijuana smoke, which he asserted caused the positive drug test results, (2) the results of the drug tests were reported incorrectly, and (3) his use of legal prescriptions and over-the-counter drugs led to a "false positive."

On July 21, 2010, a DHR Hearing Officer issued his report and recommendation.  He determined that appellant's argument and supporting documents failed to "outweigh[] or call[] into question the recent drug test results[,]" which "accurately reflect[ed] the presence of marijuana in Employee's

---

[1]  *See* D.C. Code § 1-620.32.

urine[,]" and that the preponderance of evidence "support[ed] the existence of the cause for Employee's termination." The Hearing Officer concluded nevertheless that the proposed adverse action was precluded. He noted that under Article 24, Section 2.2 of the CBA, both the employee and the Union must be given notice of potential adverse actions, and that "[a]lthough the employee received the [n]otice, it does not appear that notice was provided to Employee's union." The Hearing Officer further noted that the CBA provides that "[t]he failure of Employer to issue such notice shall preclude the discipline pursuant to law."

On August 9, 2010, Karla Kirby, the DHR Deciding Official, issued her notice of final decision to remove appellant from his position. Deciding Official Kirby rejected the Hearing Officer's recommendation that adverse action was precluded. She reasoned that termination was permissible because appellant did not raise in his response the issue of a violation of the CBA for failure to notify the Union, and because "[t]here is no evidence in the record which indicates that there was a violation of the CBA with respect to notification to the union." Kirby characterized the Hearing Officer's finding that the CBA was violated as "conclusory and not supported by any facts or evidence in the record." She further reasoned that, even assuming that no separate notification was given to the Union, service of notice to appellant, a member of the Union, constituted sufficient notice

to the Union, and also that there was "no evidence that the employee suffered any diminution of his rights in this case[,]" as he was "ably represented in this matter by his attorney[.]" In addition, Deciding Official Kirby agreed with the Hearing Officer's assessment that there was "no justification for the presence of [m]arijuana in the employee's system." She determined that appellant should be removed from his position effective August 28, 2010.

On September 24, 2010, appellant filed a Petition for Appeal with the OEA, challenging DHR's decision to terminate his employment. Senior Administrative Judge Joseph E. Lim (the "ALJ") issued his decision on December 19, 2013. The ALJ found that appellant tested positive for marijuana use; that appellant's challenge to the drug test results was without merit; that there was "no evidence that the Agency gave notice of its proposed adverse action to [the] Union"; and, more definitively, that the Agency "did not provide [the] Union a notice of the proposed action." He also concluded that it "appear[ed] that [the] Agency violated Article [24, Section 2.2] of the CBA." The ALJ then considered whether the Agency's failure to give the required prior written notice to the Union precluded appellant's termination. The ALJ noted that appellant did not make any arguments about a CBA violation in response to the notice he received even though he had received an extension of time to respond and thereafter responded through an

attorney. "Therefore," the ALJ concluded, "although [the] Agency violated the CBA, it does not appear that it harmed Employee." Applying "the OEA's [r]ule for harmless error,"[2] the ALJ determined that the violation was harmless because "it did not affect Employee's substantial rights, did not affect [the] Agency's decision, and did not affect Employee's presentation of his defense so that a different decision could have been reached."[3] Having determined that the penalty

---

[2] The OEA harmless error rule was set out in 6 DCMR § B631.3 (2013), which provides:

> Notwithstanding any other provision of these rules, [OEA] shall not reverse an agency's action for error in the application of its rules, regulations, or policies if the agency can demonstrate that the error was harmless. Harmless error shall mean an error in the application of the agency's procedures, which did not cause substantial harm or prejudice to the employee's rights and did not significantly affect the agency's final decision to take the action.

*See also Harding v. District of Columbia Office of Emp. Appeals*, 887 A.2d 33, 34 (D.C. 2005) (citing the regulation as then codified in 6 DCMR § 632.4 (1999)).

[3] In support of his decision, the ALJ cited *Cornelius v. Nutt*, 472 U.S. 648, 659 (1985) (explaining that "in an appeal of an agency disciplinary decision to the [Merit Systems Protection] Board, the agency's failure to follow bargained-for procedures may result in its action's [sic] being overturned, but only if the failure might have affected the result of the agency's decision to take the disciplinary action against the individual employee"); *Aleck v. United States Postal Serv.*, 192 F. App'x 957, 959 (Fed. Cir. 2006) (rejecting the claim that agency committed harmful procedural error when, during its initial investigation of a vehicle incident, it denied the employee union representation, reasoning that the employee "failed to establish the likelihood that, had he received union representation . . . , the agency might have reached a different conclusion in the matter"); *Handy v. United States*

(continued…)

of removal was within the range allowed by law and regulations, the ALJ upheld the Agency's action.

On January 14, 2014, appellant filed in the Superior Court a petition for review of the OEA decision. On July 29, 2015, the Honorable Robert Okun issued an order denying Rodriguez's petition. Citing the OEA's harmless error regulation as well as *Harding* and *Cornelius*, Judge Okun agreed with the OEA that the Agency was "not precluded from terminating [appellant's] employment because the failure to provide notice to [the] Union was harmless error[.]" Judge Okun "accord[ed] great weight" to the OEA decision and noted that appellant had not "shown that he would have received different discipline had the Union been

---

(…continued)
*Postal Serv.*, 754 F.2d 335, 337 (Fed. Cir. 1985) (affirming the decision removing the employee and treating as harmless error the Postal Service's denial of his statutory procedural right to make an oral reply to the charges that were the basis for his termination); and *Harding*, 887 A.2d at 34 (affirming OEA decision that upheld agency's decision to abolish employee's position even though the employee received only twenty-two days' notice, instead of the required thirty days' notice, of a reduction in force, because the employee did "not contend, nor can he, that he would not have been separated from the [agency] if he had received the full thirty-day notice required by statute[,]" and thus the failure to give timely notice was harmless error).

notified pursuant to the CBA." Judge Okun therefore affirmed the OEA's ruling upholding appellant's termination.[4] This appeal followed.

## II.

Although the appeal comes to us from the Superior Court, we review the administrative decision "as if the appeal had been taken directly to this court." *Hutchinson v. District of Columbia Office of Emp. Appeals*, 710 A.2d 227, 230 (D.C. 1998). The OEA decision "must state findings of fact on each material contested factual issue; those findings must be supported by substantial evidence in the agency record; and the . . . conclusions of law must follow rationally from its findings." *District of Columbia Fire & Med. Servs. Dept. v. District of Columbia*

---

[4] Judge Okun rejected, however, OEA's determination that appellant was required to file a grievance (rather than use the statutory appeal procedure established by the Comprehensive Merit Personnel Act, which provides for appeals to the OEA) to complain of DHR's failure to comply with the CBA.

Judge Okun also rejected as "meritless" appellant's argument that, pursuant to 6B DCMR 1601.2 (2009) ("Any procedural system for the review of adverse action negotiated between the District of Columbia and a labor organization shall take precedence over the provisions of this chapter for employees in a bargaining unit represented by a labor organization, to the extent that there is a difference."), the CBA took "precedence over provisions relating to government employee disciplinary procedures[,]" in particular the OEA's harmless error regulation. Judge Okun reasoned that appellant was "not challenging the appeals procedure utilized in his case," but instead was challenging "the substantive decisions made throughout the appeals process."

*Office of Emp. Appeals*, 986 A.2d 419, 424 (D.C. 2010) (internal quotation marks omitted). We "must affirm the OEA's decision so long as it is supported by substantial evidence in the record and otherwise in accordance with the law." *Dupree v. District of Columbia Office of Emp. Appeals*, 36 A.3d 826, 830 (D.C. 2011) (internal quotation marks omitted). We are not, however, required to "stand aside and affirm an administrative determination which reflects a misconception of the relevant law or a faulty application of the law." *Teamsters Local Union 1714 v. Public Emp. Relations Bd.*, 579 A.2d 706, 709 (D.C. 1990) (internal quotation marks omitted).

## III.

Appellant raises a number of arguments about why the OEA decision was erroneous, but we focus on the following contention, with which we agree and which we conclude is dispositive: that, even if the OEA harmless error review rule is applicable, DHR's decision to terminate appellant's employment, despite the Agency's failure to give the Union the notice required under Article 24, Section 2.2 of the CBA, fails harmless error review.

As a preliminary matter, we note that the CBA, a copy of which is included in the OEA record, provides by its terms that it "shall remain in full force and effect until September 30, 1995[,]" and, that absent objection, it "shall automatically be renewed for a one (1) year period thereafter[.]" Nothing in the record establishes that this duration was formally extended to make the CBA applicable to the time period at issue here. However, our case law establishes that "an expired collective bargaining agreement may continue in effect if the parties continue to act as if they are performing under it." *Pitt v. District of Columbia Dep't of Corr.*, 954 A.2d 978, 983 (D.C. 2008) (brackets omitted); *see also Hahn v. University of the District of Columbia*, 789 A.2d 1252, 1258-59 (D.C. 2002) ("Both the University and the Union appear to be abiding by the terms of the CBA even though it expired more than eight years ago. . . . In these circumstances, we hold that the provisions of the CBA are still in effect[.]"). Since neither the parties nor the intervenor has questioned the applicability of Article 24, Section 2.2 of the CBA, we assume for purposes of our analysis that it is applicable.

We also note preliminarily that no one has asked us to overturn the OEA determination that DHR "violated the CBA[.]" The DHR Deciding Official had espoused the view that notice to appellant sufficed as notice to the Union and also suggested that appellant had failed to prove that the Union did not receive a

separate notice (leading the Deciding Official to assert that the Hearing Officer's finding about a violation of the CBA was "not supported by any facts or evidence in the record"). Further, before the OEA, DHR argued that the CBA provision on which appellant relies is "invalid."[5] However, although DHR refers repeatedly in its brief to an "alleged" violation of the CBA, it has not pressed those arguments in this court.[6] Accordingly, our analysis proceeds on the assumption that Article 24,

---

[5] Highlighting the "pursuant to the law" language of Article 24, Section 2.2, DHR asserted that the relevant CBA provision was negotiated when D.C. Code §1-617.1 (b-1) (1995) provided generally that "no corrective or adverse action shall be commenced . . . more than 45 days . . . after the date . . . of the act or occurrence allegedly constituting cause." DHR argued that § 1-617.1 (b-1) — and therefore Article 24, Section 2.2 — was superseded by the CYSHA, which "was enacted to protect the children and youth of the District" from drug use and its effects. The OEA did not specifically address these arguments.

[6] DHR does fault appellant for not having preserved the issue of whether notice was given to the Union, given that he did not argue the point in his submission to the Hearing Officer. We note, however, that the record does not indicate the date of appellant's response to the notice of proposed adverse action, and thus does not make clear whether the forty-five-business-days deadline for notifying the Union had passed by the time appellant made his submission. Also, the record does not indicate whether appellant or his lawyer had a copy of the CBA (and we note that, as late as April 2013, his lawyer told the OEA that the parties had "never conducted full discovery" in the case) and thus (as would likely have *not* been the case with a Union representative) they may have been unaware of the failure-of-notice-shall-preclude-discipline provision. In any event, the short answer to DHR's preservation point is that the Hearing Officer "flagged the [notice-to-the-Union] issue *sua sponte*" and the Deciding Official and the OEA addressed it. The following rule therefore applies: "[E]ven if a claim was not pressed below, it properly may be addressed on appeal so long as it was passed upon." *Littlejohn v. United States*, 73 A.3d 1034, 1038 n.3 (D.C. 2013).

Section 2.2 of the CBA was valid at all times relevant to this appeal and that DHR violated its terms, as the OEA found.

Article 24, Section 2.2 of the CBA provides in relevant part that:

> An employee and the Union shall be notified in writing of any proposed disciplinary or adverse action within forty-five (45) days, no[t] including Saturdays, Sundays, or legal holidays, after the date that the Employer knew or should have known of the act or occurrence.
>
> In the event that the act or occurrence allegedly constituting cause for discipline is the subject on an ongoing criminal investigation, the 45-day limit imposed by the previous paragraph of this section shall be tolled until the conclusion of the criminal investigation.
>
> The failure of the Employer to issue such notice shall preclude the discipline pursuant to the law.

The CBA also memorializes the "underst[anding]" between DHR and the Union "that the employees in the bargaining unit shall have full protection of all Articles in this Agreement as long as they remain in the bargaining unit."

As recounted above, the OEA ALJ found that DHR failed to provide the notice to the Union required by Article 24, Section 2.2 of the CBA, but went on to apply harmless error review and found that the CBA violation did not prejudice appellant. We take no issue with OEA's invocation of its harmless error

regulation.[7] We also can agree that application of harmless error review might warrant a ruling in favor of the Agency if Article 24, Section 2.2 of the CBA provided only that the Union was to be notified in writing within forty-five days "after the date that the Employer knew or should have known of the act or occurrence[,]" without specifying any consequence of the failure to give the requisite notice.[8] As the OEA ALJ found, appellant had legal representation and, despite the absence of Union representation, was able to raise a number of non-frivolous arguments in an attempt to avoid termination based on his drug test results.

However, Article 24, Section 2.2 of the CBA goes further than merely establishing a notice-to-the-Union requirement: it provides that "[t]he failure of

---

[7] Again, the regulation, 6 DCMR § B631.3, provides that "[OEA] shall not reverse an agency's action for error in the application of its rules, regulations, or policies if the agency can demonstrate that the error was harmless." Per *Cornelius*, the term "agency's 'procedures'" includes "not only procedures required by statute, rule, or regulation, but also procedures required by a collective-bargaining agreement between the agency and a union." 472 U.S. at 659 (footnote omitted). Similarly, we conclude, the term "policies" in 6 DCMR § B631.3 includes Article 24, Section 2.2 of the CBA — meaning that the OEA properly applied harmless error review.

[8] *Cf. In re Morrell*, 684 A.2d 361, 370 (D.C. 1996) (attorney discipline case reasoning that because "[n]othing in the text of the [disciplinary] rules . . . specifies the result of a Hearing Committee's failure to adhere to the [sixty-day] time limit [for issuing its decision], . . . we presume that the rule is directory, rather than mandatory[,]" and attorney could show no prejudice from the delay).

the Employer to issue such notice shall preclude the discipline[.]" Contrary to the OEA's reasoning, failure of the Agency to adhere to that provision cannot be said to amount to harmless error, because if the Agency had complied with the provision, appellant's employment would not have been terminated. It is useful to compare this case to *Sutton v. United States*, No. 14-CO-0955, 2016 D.C. App. LEXIS 204 (D.C. June 23, 2016). In *Sutton*, a panel of this court reasoned that where the trial court permitted the government to amend the criminal information on the day of trial to add a new charge in violation of Super. Ct. Crim. R. 7 (e), the violation did not affect the defendant's substantial rights and was harmless error. *Id*. at *7-8, 14-16. Notably, it was not sufficient for purposes of our analysis that the amendment had no effect on the defense strategy; necessary to the conclusion that the defendant was not prejudiced by the court's failure to adhere to Rule 7 (e) was the additional fact that jeopardy had not attached at the time of the amendment, meaning that if the trial court had denied the motion to amend the information, "the government could still have voluntarily dismissed the charges and filed a new information[,]" leaving the defendant in exactly the same position he was in as a result of the erroneously permitted amendment. *Id.* at *14.

Here, by contrast, with the Agency having failed to give the Union timely notice, the CBA required a "permanent retraction" (to use the Hearing Officer's

words) of any discipline based on the results of the April 20, 2010, drug test. The parties do not specifically identify the date on which the forty-five business days began to run or the precise date by which DHR was required to give notice to the Union, but we presume that the forty-five-business-days period began on or about May 25, 2010, the date of the medical review officer's report conveying the drug test results to DHR. Thus, by the date when Deciding Official Kirby announced appellant's termination (August 9, 2010), it was impossible for the Agency to give notice to the Union within forty-five business days of the date when it "knew or should have known of the act or occurrence" that triggered the potential discipline; i.e., the forty-five-day deadline had irrevocably passed.[9]

---

[9] As a practical matter, the Employer's failure to give notice to the Union within 45 days of the date of the occurrence triggering adverse action may not be truly irrevocable in cases where the occurrence leads to an additional occurrence (e.g., an arrest or conviction, workplace hostility attributable to the initial occurrence, etc.) that could constitute an independent ground for adverse action, and that would trigger a new 45-day notice period. Thus, the Employer's negligent failure to satisfy the 45-day notice-to-the-Union requirement would not necessarily prohibit the Employer from terminating the employment of a worker who commits a criminal or other heinous act in the workplace. In any event, it seems clear from the second quoted paragraph of Article 24, Section 2.2 that the parties intended for the 45-day notice requirement to be given effect even where the occurrence triggering discipline involves conduct so serious as to be criminal. The only exception to the notice requirement that is specified in Article 24, Section 2.2 is tolling of the 45-day notice period where the occurrence triggering the proposed discipline is the subject of "an ongoing criminal investigation." Under the *expressio unius* maxim (when express mention is made of one thing, the exclusion of others is implied), that express exception "reasonably . . . impl[ies] the

(continued…)

Unlike *Harding*, this is not a case where appellant cannot "contend . . . that he would not have been separated[,]" 887 A.2d at 34, if the agency had complied with the applicable provisions regarding notice. Rather, "failure to follow bargained-for procedures . . . affected the result of the agency's decision to take the disciplinary action against the individual employee." *Cornelius*, 472 U.S. at 659. DHR argues that we owe deference to OEA's contrary "construction of its harmless-error rule," but we need not defer where OEA failed to appreciate the mandatory nature[10] of the CBA provision that states that "[t]he failure of the Employer to issue such notice [to the union] shall preclude the discipline[.]" As appellant points out, the CBA "did not simply require that the union be notified, it spelled out specific consequences if the union was not notified" within forty-five days of "the date that the Employer knew or should have known of the act or occurrence": "the adverse action could not be taken."

---

(…continued)
preclusion" of other exceptions to the 45-day notice requirement. *Odeniran v. Hanley Wood, LLC*, 985 A.2d 421, 427 (D.C. 2009).

[10] "The general rule is that a statutory time period is not mandatory unless it both expressly requires an agency or public official to act within a particular time period and specifies a consequence for failure to comply with the provision." *Teamsters Local Union 1714*, 579 A.2d at 710 (quoting *Thomas v. Barry*, 729 F.2d 1469, 1470 n.5 (D.C. Cir. 1984) (internal quotation marks and alteration omitted)).

We reject OEA's view that the violation of this mandatory provision of the CBA was a mere "technical procedural error." In *Logan v. United States*, 591 A.2d 850, 853 (D.C. 1991), this court concluded that there was a "harmless technical" violation of the statute requiring the government to give a criminal defendant written, pre-trial notice of previous convictions on which the government intends to rely in seeking a sentence enhancement. *Id.* We reasoned that where the defendant "receive[d] clear notice of a previous conviction, a misstatement as to a single piece of information, such as the date of a conviction or the county in which a conviction was imposed, [must be] deemed harmless" because "the purposes of the statute were fulfilled." Here, whatever the Union's reason for bargaining for the failure-of-notice-shall-preclude-discipline provision, we cannot conclude that "the purposes of the [provision] were fulfilled" notwithstanding the failure to give timely notice to the Union.[11]

---

[11] The Deciding Official and the OEA ALJ seemed to assume that the sole purpose of notice to the Union was to give the employee a chance to arrange representation, concluding that appellant "suffered [no] diminution of his rights" because he was "ably represented in this matter by his attorney[.]" The fact that Article 24, Section 2.2 does not require that the Union and the employee receive simultaneous notice weighs somewhat against that assumption. Further, another provision of the CBA causes us to question that assumption. Article 6, Section 8 of the CBA provides that "if disciplinary action could result" from an "examination of an employee by a Management official in connection with an investigation," if "the employee requests representation," and "[i]f a Union representative is not available, the employee will be given a reasonable amount of time to obtain [other] representation." That provision implies, on the one hand, a

(continued…)

We note that the CBA provision that "failure of the Employer to issue such notice shall preclude the discipline" is quite unlike other CBA provisions that establish notice-to-the-Union requirements but do not say what consequences

_____

(…continued)

recognition that legal representation can sometimes be an adequate substitute for Union representation. But it suggests on the other hand that when the Union wanted to allow other "representation" to substitute for involvement of the Union in contexts where disciplinary action against an employee may result, it knew how to have the CBA say so. That the CBA does *not* say so in Article 24, Section 2.2 is therefore telling; i.e., the omission suggests that in the circumstance addressed in Article 24, Section 2 (the circumstance of "disciplinary or adverse action" against an employee actually being proposed), an employee's success in obtaining legal representation is not a substitute for the required notice to the Union.

In any event, it would be short-sighted to assume that the Union had a single, narrow objective in bargaining for the failure-of-notice-shall-preclude-discipline provision. We cannot discount the possibility that the Union bargained for notice of potential adverse actions pursuant to an objective of "safeguarding not only the particular employee's interest, but also the interests of the entire bargaining unit by exercising vigilance to make certain that the employer does not initiate or continue a practice of imposing punishment unjustly." *NLRB v. J. Weingarten, Inc.*, 420 U.S. 251, 260-61 (1975); *cf.* Theodore C. Hirt, *Union Presence in Disciplinary Meetings*, 41 U. CHI. L. REV. 329, 342-43 (1974) ("Steward presence at [a] disciplinary meeting gives the union information that enables it to detect trouble spots to be treated in future contract negotiations. The union also gains detailed knowledge of a potential grievance and is therefore better able to identify and prosecute substantial grievance claims. . . . [T]he steward ensures . . . that the result will be a proper precedent for future employer decisions on discipline."). The Union possibly had some other objective that we do not (and need not) understand and will not attempt to second-guess. It is enough to recognize that the Union bargained for a specific prohibition: that failure to give timely notice to the Union precludes discipline.

follow from failure to adhere to them.[12]  Those other provisions — but not Article 24, Section 2.2 — are the types of collective bargaining provisions that the Supreme Court discussed in *Cornelius*, violations of which may be found harmless.

## IV.

The preclusion of discipline that Article 24, Section 2.2 mandates is a bargained-for provision that DHR could have declined to accept at the time the CBA was negotiated, but that the Agency instead accepted pursuant to what the CBA describes as "negotiations during which both parties had unlimited right and opportunity to make demands and proposals with respect to any mandatory negotiable subject matter."  Article 34, Section 3.  We agree with the Hearing Officer's conclusion that "the failure to provide the required notice [to the Union] pursuant to the CBA preclude[d] the adverse action."  Accordingly, we reverse the

---

[12]  *See, e.g.*, Article 13, Section 3 (providing that "[i]f a reassignment or relocation of a Union representative is planned, the Union President will be given a ten (10) day advance written notice[,]" but not specifying any consequence for non-compliance); Article 16, Section 3 (stating that "[t]he Employer agrees to give the Union at least thirty days advance notice . . . of the intent to contract out work which has not previously been contracted out[,]" but not specifying any consequence for non-compliance); Article 17, Section 3 (stating that "[a]t least thirty (30) days prior to the Department's effecting a reorganization, the Department shall notify the Union in writing and shall provide [specified] information[,]" but not specifying any consequence for non-compliance).

decision of the Superior Court, vacate the decision of the OEA, and remand for "further proceedings not inconsistent with this opinion."[13]

*So ordered.*

---

[13] *Mitchell v. District of Columbia*, 736 A.2d 228, 232 (D.C. 1999).