*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 17-AA-005

DONNA BLACK, PETITIONER,

V.

DISTRICT OF COLUMBIA DEPARTMENT OF HUMAN SERVICES, RESPONDENT.

On Petition for Review of a Final Order
of the District of Columbia Office of Administrative Hearings
(DHS-371-15)

(Hon. Sharon E. Goodie, Administrative Law Judge)

(Argued April 26, 2018                    Decided July 19, 2018)

*Jennifer Mezey*, with whom *Jonathan H. Levy* and *David Carpman*, Legal Aid Society of the District of Columbia, were on the brief, for the petitioner.

*Lucy E. Pittman*, with whom *Karl A. Racine*, Attorney General for the District of Columbia, and *Todd S. Kim* and *Loren L. AliKhan*, Solicitor General and Deputy Solicitor General at the time the brief was filed, were on the brief, for the respondent.

Before BLACKBURNE-RIGSBY, *Chief Judge*, EASTERLY, *Associate Judge*, and KRAVITZ, *Associate Judge, Superior Court of the District of Columbia.*[*]

KRAVITZ, *Associate Judge*:  Donna Black seeks review of a decision of an administrative law judge at the Office of Administrative Hearings denying her

---

[*] Sitting by designation pursuant to D.C. Code § 11-707 (a) (2012 Repl.).

request for retroactive benefits under the Program on Work, Empowerment, and Responsibility. The program, known as POWER, provides cash assistance to residents of the District of Columbia who have minor children and meet the financial eligibility standards of the Temporary Assistance for Needy Families program (TANF) but are unable to comply with TANF's work requirements because of a physical or mental incapacity or a need to care for an incapacitated household member. Ms. Black has received POWER benefits since October 2015 and was a TANF recipient for many years before then. She contends that the Department of Human Services (DHS) was required to screen her for POWER eligibility when she recertified for TANF in February 2014 and that she was eligible for POWER as a matter of law at that time because of her daughter's receipt of Supplemental Security Income (SSI) disability benefits.

Ms. Black's claim of automatic POWER eligibility due to her daughter's SSI disability designation is foreclosed by the plain language of the POWER statute. We nonetheless reverse the decision of the Office of Administrative Hearings, concluding that the administrative law judge applied an erroneous legal standard in determining that Ms. Black presented insufficient evidence of her daughter's incapacity to establish eligibility for POWER benefits. Because it also appears that DHS failed to comply with a clear statutory mandate to screen for

POWER eligibility when Ms. Black recertified for TANF in February 2014, we remand to DHS with instructions to screen Ms. Black for the POWER program retroactive to that time.

## I.    RELEVANT PUBLIC BENEFITS PROGRAMS

A brief overview of the relevant public assistance programs is essential to a proper understanding of our analysis to follow.

### A. Temporary Assistance for Needy Families

TANF is a federally-funded program that provides cash assistance to families with minor children and little or no income. *See* 42 U.S.C. §§ 601-619 (2012).  Congress funds the program through block grants to the states (including the District of Columbia), *id*. § 603, with a 60-month limit on the total time an adult may receive TANF benefits funded by federal grants, *id*. § 608 (a)(7)(A).  To promote self-sufficiency and reduce dependence, federal law mandates that states impose work requirements on benefits recipients.  *Id*. §§ 602 (a)(1)(A)(ii)-(iii), 607.  District of Columbia residents who receive TANF benefits thus must work or

participate in job search or job readiness activities to avoid cuts in benefits or other sanctions. D.C. Code §§ 4-205.19b to 4-205.19f (2012 Repl.).

The amount of money a District of Columbia family receives under TANF is calculated by deducting the family's income (if any) from a payment level set by statute for the family's size. D.C. Code § 4-205.52 (a) (2017 Supp.). A family's size is generally determined by counting the dependent children under the age of 18 and their parents living in the household, *id.* § 4-205.15 (a), while excluding children over 18 and household members who receive SSI benefits, *id.* § 4-205.15 (e)(1). As examples, a family with four eligible recipients and no income receives $463.00 in monthly TANF benefits under current law; a family with ten eligible recipients and no income receives $950.00. *Id.* § 4-205.52 (c).

Federal law permits states to use their own funds to provide TANF benefits beyond the 60-month limit on the use of federal funds, 42 U.S.C. § 608 (a)(7)(F), and the District of Columbia has long exercised this authority, *see* D.C. Code § 4-205.11b (2012 Repl.). Beginning in 2011, however, District of Columbia law reduced the amount of TANF benefits provided to families beyond the 60-month limit, with payments to those long-term recipients subjected to successive cuts in

2011, 2013, and 2014 and projected to be reduced to zero in 2017 and beyond. *Id.* §§ 4-205.11b; 4-205.52 (c-2)-(c-3) (2017 Supp.).[1]

## B. Program on Work, Empowerment, and Responsibility

POWER is a locally-funded program in the District of Columbia that provides cash assistance to residents who have minor children and meet the financial eligibility criteria for TANF but are unable to satisfy TANF's work requirements due to a physical or mental incapacity. Initially, an "assistance unit" (household) was eligible for POWER only if the head of the assistance unit was physically or mentally incapacitated. D.C. Code § 4-205.72 (b)(2) (2012 Repl.). Effective October 1, 2013, however, the program was expanded to include additional categories of eligible households, including, as relevant here, families in which the head of the household is "needed in the home, due to medical necessity,

---

[1] In 2017, shortly before the final cut was to go into effect, the D.C. Council repealed the reductions in benefits for long-term TANF recipients and obligated the District of Columbia, beginning in December 2017, to use its own funds to pay TANF benefits in the full amount to all eligible families, including those beyond the 60-month federal limit. Fiscal Year 2018 Budget Support Act of 2017, D.C Law 22-33, §§ 5002 (b) (repealing D.C. Code § 4-205.11b); 5002 (e)(1) (repealing D.C. Code § 4-205.52 (c-2)); 5002 (e)(2) (repealing D.C. Code § 4-205.52 (c-3)).

to care for a household member who is physically or mentally incapacitated." *Id.* § 4-205.72a (a)(1)(B) (2017 Supp.).

POWER holds significant advantages over TANF for eligible participants. Recipients of POWER benefits do not have to work or take part in job search or job readiness activities. *See* D.C. Code § 4-205.76 (2012 Repl.) (requiring only classes and training opportunities). Cash assistance payments under POWER are in the same amounts as full TANF benefits, *id.* §§ 4-205.52, 4-205.78, and are provided (and always have been) without time limits or reductions after 60 months, *id.* § 4-205.72 (e). And a month in which a person receives POWER benefits does not count toward the person's 60-month TANF limit, *see id.* § 4-205.11a, thereby preserving the person's ability to receive TANF benefits at the full amount in the event the person loses his or her eligibility for POWER and wishes to return to the TANF program.

In light of these advantages, DHS, which administers both programs, is required by law to screen for POWER eligibility every time a person applies or recertifies for the TANF program and whenever a TANF applicant or recipient raises an issue of incapacity or disability. *See* 29 DCMR § 5829.1 ("The Director or his or her designee shall screen TANF applicants and recipients at the point of

application, recertification, or when incapacity or disability is raised by the applicant or recipient for the Program on Work, Employment and Responsibility (POWER) to determine if the head of the assistance unit has a physical or mental incapacity."); D.C. Code § 4-205.19a (b) (2017 Supp.) ("As part of the redetermination of eligibility, a TANF recipient shall be provided information about the POWER program and screened for POWER eligibility.").

If, through a screening or otherwise, it appears that a TANF applicant or recipient may be eligible for POWER benefits under D.C. Code § 4-205.72 due to the person's own physical or mental incapacity, then DHS is required to conduct a "medical review" to determine whether the person is in fact incapacitated. *Id*. § 4-205.74 (a). If it appears that a TANF applicant or recipient may be eligible for POWER benefits under D.C. Code § 4-205.72a due to the need to care for a physically or mentally incapacitated member of the person's household, then DHS must conduct a "review" to determine whether the household member is in fact incapacitated and, if so, whether the head of household is needed in the home. *Id*. § 4-205.74 (a-1).

Statutory provisions defining "physical or mental incapacity" and setting forth the permissible means of proof of incapacity under TANF and POWER are discussed in detail in Section III.C of this opinion.

### C. Supplemental Security Income

SSI is a federal assistance program that provides cash benefits to low-income persons who are older than 65 or blind or disabled. *See* 42 U.S.C. §§ 1381-1385 (2012). A child under the age of 18 is "disabled" for the purpose of establishing SSI eligibility if the child "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id*. § 1382c (a)(3)(C)(i).

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Ms. Black resides in the District of Columbia with her husband, her nine children, and one grandchild. Seven of Ms. Black's children were under the age of 18 at the time of the administrative hearing, in October 2015. One of the seven minor children, a 13-year-old girl, had been receiving SSI benefits for many years

due to learning and speech disabilities that left her functioning academically at a kindergarten level despite her enrollment in the eighth grade. Two of the other minor children suffered from disabilities as well – one with asthma, the other with effects of lead poisoning – but their conditions were not sufficiently severe to make them eligible for SSI.

Ms. Black was a long-time participant in the TANF program, having received benefits for more than 200 months by the time of the administrative hearing. DHS thus began reducing the amount of Ms. Black's monthly TANF payments in 2011, as by then Ms. Black was well past the 60-month limit. The first cut, on April 1, 2011, reduced Ms. Black's payment to $718.00 from $897.00, the full amount at the time for a family with eight eligible recipients. (Ms. Black, her husband, and the six minor children not receiving SSI were deemed eligible recipients.) Additional cuts on October 1, 2013 and October 1, 2014 reduced Ms. Black's monthly payments to $539.00 and then to $319.00.

Proceeding pro se, Ms. Black made a timely request for a hearing before the Office of Administrative Hearings (OAH) to challenge both the October 2014 reduction in her TANF benefits and a further adjustment made in June 2015 due to confusion over the death of one child, the aging-out of another, and the birth of a

baby.  At a pre-hearing administrative review at DHS on July 15, 2015, Ms. Black and DHS resolved their differences over the June 2015 adjustment, with DHS agreeing to make certain retroactive payments, but they were unable to settle their dispute over the October 2014 reduction.

Ms. Black indicated during the pre-hearing administrative review that she would like to be considered for POWER benefits, and she submitted medical information concerning her 13-year-old daughter's disabilities for assessment by DHS's Medical Review Team.  This is the first indication in the record that DHS ever undertook a screening of Ms. Black for POWER eligibility, despite Ms. Black's recertification for TANF every February for more than 15 years and information in DHS's files showing that Ms. Black's daughter had been ineligible for TANF benefits for many years due to her receipt of SSI disability benefits.

Ms. Black and a DHS representative appeared for a scheduling conference before an administrative law judge (ALJ) at OAH on August 13, 2015.  The ALJ continued the conference to September 10, 2015, in part because DHS had not yet completed its review of Ms. Black's request for POWER benefits.

The parties appeared at OAH again on September 10, 2015. The DHS representative informed the ALJ that Ms. Black had been approved for POWER benefits since the last hearing, with monthly payments set to begin on October 1, 2015. In response to questions from the ALJ, Ms. Black then stated that the only issue to be addressed at the upcoming administrative hearing was the October 2014 reduction in her monthly TANF benefits, from $539.00 to $319.00. Ms. Black asserted that the reduction was unlawful because she did not receive notice of it in advance. *See* D.C. Code § 4-205.55 (a) (2012 Repl.) (requiring timely notice of any intended action to discontinue, withhold, terminate, suspend, or reduce assistance).

The ALJ presided over an evidentiary hearing in the case on October 8, 2015. The DHS representative testified that the agency mailed a computer-generated letter dated September 10, 2014 to Ms. Black notifying her of the reduction in TANF benefits scheduled to take effect on October 1, 2014. Ms. Black denied receiving the September 10, 2014 letter or any other advance notice of the October 1, 2014 reduction in her TANF benefits. She confirmed that she was transferred to the POWER program on October 1, 2015 and that she began receiving $910.00 in monthly POWER benefits at that time.

The ALJ issued a Final Order on October 7, 2016. Finding that DHS provided Ms. Black proper notice of the October 1, 2014 reduction in TANF benefits, the ALJ rejected Ms. Black's challenge to the reduction.

The ALJ then addressed what she stated was a request from Ms. Black for retroactive POWER benefits. Relying on a provision of the TANF statute for a definition of incapacity, the ALJ determined that the request must be denied due to Ms. Black's failure to present competent medical testimony establishing her daughter's incapacity. The ALJ reasoned as follows:

> The D.C. Code does not specifically define the term "incapacitated" for purposes of POWER determinations. However, the definition of incapacity for TANF purposes includes a requirement that "[t]he incapacity shall be supported by competent medical testimony." D.C. Code, 2001 Ed. § 4-205.42(1)(A).

> Here, the only evidence regarding POWER eligibility before September 2015 is Petitioner Black's testimony that two of her children are disabled. The record does not contain any "competent medical testimony" to support the claim. Petitioner Black had the burden to prove that she was eligible for POWER benefits. The record evidence does not demonstrate that she is entitled to retroactive POWER benefits before September [2015.]

Ms. Black filed a timely motion with OAH seeking reconsideration of the ALJ's Final Order. Represented by counsel for the first time in the proceedings,

Ms. Black did not ask the ALJ to reconsider the rejection of her challenge to the October 2014 reduction in her TANF benefits. Instead, she argued that she was entitled to retroactive POWER benefits, asserting that she was unable to work because of caretaking responsibilities required by her 13-year-old daughter's disabilities. In particular, Ms. Black stated in a sworn declaration submitted with her motion that she was frequently needed at her daughter's school to make sure her daughter did not get in trouble there and that she had to watch her daughter closely at home to prevent her daughter's involvement in dangerous activities. Stating that DHS had known of her daughter's condition from the time the agency excluded her daughter from the calculation of the family's TANF grant due to her approval for SSI disability benefits, Ms. Black argued that DHS had breached its statutory obligation to screen for POWER eligibility once POWER was expanded, effective October 1, 2013, to include parents who are "needed in the home, due to medical necessity, to care for a household member who is physically or mentally incapacitated." D.C. Code § 4-205.72a (a)(1)(B). Ms. Black asked that DHS be directed to pay her POWER benefits retroactive to February 2014, the first time she recertified for TANF following the expansion of the POWER program.

The ALJ never addressed the merits of Ms. Black's motion for reconsideration. Citing OAH Rule 2828.15, the ALJ issued a notice on February 3,

2017 stating that the motion was deemed denied as a matter of law due to the ALJ's failure to rule on the motion within 45 days of its filing.

This timely petition for review followed.

### III. ANALYSIS

As in her motion for reconsideration before OAH, Ms. Black does not seek review in this court of the ALJ's rejection of her challenge to the October 2014 reduction in her TANF benefits. Instead, Ms. Black asks this court to order DHS to grant her POWER benefits retroactive to February 2014, arguing that the ALJ erred as a matter of law in finding the evidence of her daughter's incapacity insufficient to establish eligibility for POWER benefits. Advancing an argument not made to OAH, Ms. Black contends that the ALJ correctly looked to the statute creating the District of Columbia's TANF program for guidance on the permissible means of proving incapacity but erred in failing to apply a provision of the statute that requires acceptance of an eligibility finding for SSI disability benefits as proof of incapacity. *See* D.C. Code § 4-205.42 (1)(D) (2012 Repl.) ("A finding of eligibility for OASDI or SSI benefits, based on disability or blindness, shall be deemed acceptable proof of incapacity for purposes of the TANF program."). Ms.

Black asserts that she was eligible for POWER as a matter of law under § 4-205.42 (1)(D) and that DHS thus should be directed to pay her full POWER benefits retroactive to February 2014, the first time she recertified for TANF (and should have been screened for POWER) following the October 2013 expansion of the POWER program.

## A. Preservation of Issue

DHS argues that Ms. Black forfeited this claim by failing to make a timely request for retroactive POWER benefits in the administrative process. In the alternative, the agency argues that even if the claim was preserved, Ms. Black waived what she now advances as her principle argument – that she was eligible for POWER as a matter of law based on her daughter's receipt of SSI disability benefits – by failing to make the argument before OAH, even in her motion for reconsideration.

Claims not properly preserved in the administrative setting are generally considered forfeited. *Dupree v. District of Columbia Dep't of Corr.*, 132 A.3d 150, 157 (D.C. 2016). This presumptive rule of forfeiture includes claims made for the first time in a motion for reconsideration. *Williams v. District of Columbia*

*Dep't of Pub. Works*, 65 A.3d 100, 110 n.51 (D.C. 2013). Absent extraordinary circumstances, therefore, we refuse to address requests for relief not timely presented to the administrative agency. *Bostic v. District of Columbia Hous. Auth.*, 162 A.3d 170, 176 (D.C. 2017).

Ms. Black argues that she made an implicit request for retroactive POWER benefits in a written submission she sent to OAH one day before the September 10, 2015 hearing. In that pro se filing, Ms. Black suggested that DHS should have told her about the POWER program years earlier in light of information known to the agency about the disabilities of at least one of her children:

> In addition to my previous matter I am requesting Power benefits. As an Agency that helps low income families it is sad I had to find out about this program from Legal Aid Society of The District of Columbia . . . . My family has suffered a great deal because I have two children that suffers from disabilities that is no fault of theirs or mines, but the Agency has been very aware of one of my children's disabilities for over eight years . . . . For the agency to know of programs that can help families in desperate need and not inform me of this help the agency has failed to provide all needs and information to low income families as myself.

Courts in this jurisdiction are required to construe pro se pleadings liberally. *Flax v. Schertler*, 935 A.2d 1091, 1100 (D.C. 2007). Administrative agencies have no less an obligation, particularly when applying statutory regimens, like those

governing public assistance programs, that rely "'largely on lay persons, operating without legal assistance, to initiate and litigate administrative and judicial proceedings.'" *Rhea v. Designmark Serv., Inc.*, 942 A.2d 651, 655 (D.C. 2008) (quoting *Goodman v. District of Columbia Rental Hous. Comm'n*, 573 A.2d 1293, 1299 (D.C. 1990)).

It is a close question whether the ALJ should have understood Ms. Black's pro se submission as an implicit request for retroactive POWER benefits. We need not resolve the question, however, because for reasons not apparent in the record the ALJ ruled on Ms. Black's eligibility for retroactive POWER benefits. Under our case law, that was sufficient to preserve the claim for our review. *See Rodriguez v. District of Columbia Office of Emp. Appeals*, 145 A.3d 1005, 1010 n.6 (D.C. 2016) ("[E]ven if a claim was not pressed below, it properly may be addressed on appeal so long as it was passed upon." (quoting *Littlejohn v. United States*, 73 A.3d 1034, 1038 n.3 (D.C. 2013)) (internal quotation marks omitted)).

DHS's alternative contention that Ms. Black waived her argument for automatic POWER eligibility based on her daughter's SSI disability designation is unavailing. Once a claim is deemed preserved for our review, the "parties on appeal are not limited to the precise arguments" presented below. *Vizion One, Inc.*

*v. District of Columbia Dep't of Health Care Fin.*, 170 A.3d 781, 790 (D.C. 2017) (quoting *Tindle v. United States*, 778 A.2d 1077, 1082 (D.C. 2001)).

We thus proceed to the merits of Ms. Black's claim for retroactive POWER benefits and consider all of the arguments on both sides, whether or not they were presented to OAH.

**B. Standard of Review**

We will affirm an OAH decision unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Lynch v. Masters Sec.*, 93 A.3d 668, 674 (D.C. 2014) (quoting *Savage-Bey v. La Petite Acad.*, 50 A.3d 1055, 1060 (D.C. 2012)). "In order to be affirmed on appeal, '(1) the [OAH's] decision must state findings of fact on each material, contested factual issue; (2) those findings must be based on substantial evidence; and (3) the conclusions of law must flow rationally from the findings.'" *Yates v. United States Dep't of the Treasury*, 149 A.3d 248, 250 (D.C. 2016) (quoting *Wash. Times v. District of Columbia Dep't of Emp't Servs.*, 724 A.2d 1212, 1216 (D.C. 1999)).

We review de novo all questions of law, including the proper construction of statutes. *Odeniran v. Hanley Wood, LLC*, 985 A.2d 421, 424 (D.C. 2009). Although we generally accord "appropriate weight" to the reasonable interpretation of a statute by the agency charged with the statute's enforcement, OAH "is vested with the responsibility for deciding administrative appeals involving a substantial number of different agencies" and thus "does not have the kind of subject matter expertise" that warrants our deference. *Washington v. District of Columbia Dep't of Pub. Works*, 954 A.2d 945, 948 (D.C. 2008).

## C. Proof of Incapacity

Stating that the POWER statute provides no definition of incapacity, the ALJ looked to a section of the TANF statute, D.C. Code § 4-205.42, in determining whether Ms. Black presented sufficient evidence of her daughter's incapacity to establish eligibility for retroactive POWER benefits.[2] In particular,

---

[2] D.C. Code § 4-205.42 provides, in relevant part:

> For the purpose of determining coverage and conditions of eligibility of applicants and recipients in financial and medical assistance programs of the District, the Mayor shall apply the following definitions relating to incapacity and disability with respect to parents and other

(continued . . .)

the ALJ focused on § 4-205.42 (1)(A) and its requirement that a physical or mental incapacity be "supported by competent medical testimony." The ALJ noted that Ms. Black presented no such testimony at the administrative hearing and found that Ms. Black's claim for retroactive POWER benefits thus failed due to a lack of proof of her daughter's incapacity. The ALJ made no mention of the SSI benefits received by Ms. Black's daughter or the statement in § 4-205.42 (1)(D) that a finding of eligibility for SSI disability benefits is acceptable proof of incapacity.

---

(. . . continued)

adults who are otherwise eligible for assistance under such programs:

(1) *Physical or mental incapacity. —*

(A) For the TANF program, physical or mental incapacity shall be deemed to exist when 1 parent has a physical or mental defect, illness, or impairment. The incapacity shall be supported by competent medical testimony and must be of such a debilitating nature as to reduce substantially or eliminate the parent's ability to support or care for an otherwise eligible child and be expected to last for a period of at least 30 days.

(B) Repealed.

(C) In making the determination of ability to support, the Mayor shall take into account the limited employment opportunities of individuals with disabilities.

(D) A finding of eligibility for OASDI or SSI benefits, based on disability or blindness, shall be deemed acceptable proof of incapacity for purposes of the TANF program.

Both parties find fault with the ALJ's statutory analysis. Ms. Black contends that the ALJ correctly relied on D.C. Code § 4-205.42 but erred in overlooking § 4-205.42 (1)(D). Specifically, Ms. Black asserts that the ALJ should have awarded her retroactive POWER benefits on a finding that her daughter's SSI disability designation was adequate proof of incapacity, without the need for medical testimony. DHS disagrees, arguing that it was error for the ALJ to look to any part of § 4-205.42 in determining POWER eligibility because the POWER statute – in particular, D.C. Code §§ 4-205.72 (c) and 4-702a (a)(1)(B) – provides a definition of incapacity and sets forth the acceptable means of proving it. DHS argues further that the ALJ's legal error was harmless, and that the decision below thus should be affirmed, because the applicable provisions of the POWER statute require proof of incapacity by "competent medical evidence" and Ms. Black presented none.

"The primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that he has used." *Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 753 (D.C. 1983) (en banc) (internal quotation marks and citation omitted). We thus look first to the language of the statutes to see if it is "plain and admits of no more than one meaning." *Id.* "[I]f the plain meaning of statutory language is clear and unambiguous and will not

produce an absurd result, we will look no further." *Smith v. United States*, 68 A.3d 729, 733 (D.C. 2013) (internal quotation marks and citation omitted).

The two sections of the POWER statute cited by DHS plainly provide that proof of incapacity for establishing POWER eligibility is to be determined according to substantive and evidentiary requirements set forth in those provisions themselves, without regard to any differing standards that may appear in the TANF statute or elsewhere. The first, D.C. Code § 4-205.72,[3] provides, in subsection (a),

---

[3] D.C. Code § 4-205.72 provides, in relevant part:

(a) There is established a Program on Work, Employment, and Responsibility ("POWER"), eligibility for which shall be the same as the factors, standards, and methodology for determining eligibility for TANF, as set forth in this subchapter, except as provided by subsections (b), (c), and (d) of this section, and §§ 4-205.72a through 4-205.77.

(b) An assistance unit shall be eligible for POWER under the following circumstances:

(1) The head of the assistance unit is the parent of a minor child;

(2) The head of the assistance unit is physically or mentally incapacitated; and

(3) The physical or mental incapacity of the head of the assistance unit rises to the level of incapacity outlined by subsection (c) of this section.

(c) For the purposes of subsection (b) of this section, physical and mental incapacity must be verified by competent medical evidence and when considered

(continued . . .)

that eligibility standards for POWER are the same as for TANF "*except* as provided by subsections (b), (c), and (d) of this section, and §§ 4-205.72a through 4-205.77." (emphasis added). Subsection (c) of § 4-205.72 in turn states that for POWER eligibility based on the incapacity of the head of the assistance unit, a physical and mental incapacity must be "verified by competent medical evidence," must "[s]ubstantially preclude[] the ability of the head of the assistance unit to work or to participate in job search or job readiness activities," and must be "expected to last more than thirty days." The second section cited by DHS, D.C. Code § 4-205.72a,[4] defines POWER eligibility based on the head of household's

---

(. . . continued)

    with the head of the assistance unit's age, prior work experience, education, and other factors bearing on the head of the assistance unit's ability to work, as determined relevant by the Mayor:

    (1) Substantially precludes the ability of the head of the assistance unit to work or to participate in job search or job readiness activities; and

    (2) Is expected to last more than 30 days.

[4] D.C. Code § 4-205.72a provides, in relevant part:

    (a) In addition to the circumstances set forth in § 4-205.72, an assistance unit shall be eligible for POWER if the head of the assistance unit:

        (1)  (A)  Beginning October 1, 2013, is the parent of a minor child; and

            (B) Is needed in the home, due to medical necessity, to care for a household member

(continued . . .)

need to care for an incapacitated household member and provides, in subsection (a)(1)(B), that the household member must be "physically or mentally incapacitated *as described in § 4-205.72(c)*." (emphasis added). Nowhere does the POWER statute incorporate the definition or means of proof of incapacity contained in § 4-205.42 (1)(D), the TANF provision championed by Ms. Black and expressly limited by its own terms to proof of incapacity "for purposes of the TANF program."

It was thus clear error for the ALJ to look to the TANF statute in determining Ms. Black's eligibility for retroactive POWER benefits. Similarly untenable, given the plain language of the POWER statute, is Ms. Black's argument that her daughter's receipt of SSI disability benefits makes the family eligible for POWER benefits as a matter of law under § 4-205.42 (1)(D).

---

(. . . continued)

who is physically or mentally incapacitated as described in § 4-205.72(c).

**D. Remand**

DHS argues that no remand is necessary because the POWER statute required "competent medical evidence" to prove the incapacity of Ms. Black's daughter and Ms. Black presented no such evidence at the administrative hearing before OAH. We are not persuaded.

Generally, an administrative agency's decision can be sustained on review only on the grounds on which the agency actually relied. *Morris v. United States Envtl. Prot. Agency*, 975 A.2d 176, 180-81 (D.C. 2009). This approach reflects the importance of holding agencies to the proper exercise of their discretionary power through the requirement that they articulate sufficient rationales for their decisions. *See Sherman v. Comm'n on Licensure to Practice the Healing Art*, 407 A.2d 595, 602 (D.C. 1979). When a party asks us to affirm an agency's decision for a reason not relied on by the agency, we thus ordinarily remand the case for the agency's consideration in the first instance of the reason advanced by the party seeking affirmance. *Apartment & Office Bldg. Ass'n of Metro. Wash. v. Pub. Serv. Comm'n of the District of Columbia*, 129 A.3d 925, 930 (D.C. 2016).

This principle is not absolute, however, and a remand is unnecessary if "the agency would doubtless reach the same result" or if "it is clear what the agency's decision has to be." *Id.* (internal citations and quotation omitted). A remand, therefore, is not required if the agency's error "clearly had no bearing on the procedure used or the substance of [the] decision reached." *Sherman*, 407 A.2d at 602 (internal quotation omitted); *see generally* D.C. Code § 2-510 (b) (2016 Repl.) (providing that "[t]he Court may invoke the rule of prejudicial error" on review of an administrative agency's decision).

It is true that the administrative record currently contains no competent medical evidence of the incapacity of Ms. Black's daughter, as required under the POWER statute. Nonetheless, we cannot say it is doubtless the case that the ALJ would have found Ms. Black ineligible for retroactive POWER benefits had the ALJ applied the correct legal standard. If the issue of retroactive POWER benefits really had been raised at the administrative hearing, the ALJ might have considered the medical evidence of incapacity Ms. Black provided to DHS in the summer of 2015 and on which DHS relied in finding Ms. Black eligible, prospectively, for POWER benefits beginning on October 1, 2015. The ALJ also might have recognized that the absence of other medical evidence in the record was largely due to DHS's own failure, contrary to law, *cf.* 29 DCMR § 5829.1; D.C. Code § 4-

205.19a (b), to screen Ms. Black for POWER when she recertified for TANF in February 2014 and again in February 2015. And Ms. Black might affirmatively have presented competent medical evidence of her daughter's incapacity along the lines of what she submitted to DHS in the summer of 2015. Given these realistic possibilities, we cannot conclude that the ALJ's erroneous ruling should be affirmed on alternate grounds not relied on below.

A remand, therefore, is required. In the circumstances, we conclude that the best approach is to send the case directly to DHS for a retroactive screening to determine Ms. Black's eligibility for POWER benefits dating back to February 2014. DHS never screened Ms. Black for POWER before the summer of 2015, and the screening conducted at that time was for prospective eligibility only. A proper retroactive screening may resolve the parties' dispute and obviate the need for a reopening of the administrative hearing before OAH. Even if another administrative hearing is required following the retroactive screening, the hearing will undoubtedly be informed by whatever additional evidence DHS obtains in the screening process. *See* D.C. Code § 17-306 (2012 Repl.) (authorizing this court to fashion an appropriate order on remand "as is just in the circumstances").

## IV. CONCLUSION

For the foregoing reasons, the Final Order of the Office of Administrative Hearings is reversed and the case is remanded to the Department of Human Services for a prompt screening of Ms. Black's eligibility for the POWER program retroactive to February 2014.

*So ordered.*